UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANDREW S.,[1]

                          Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

DECISION & ORDER

21-CV-6565MWP

## PRELIMINARY STATEMENT

        Plaintiff Andrew S. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI").  Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.  (Docket # 13).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 9, 11).  For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

_____

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

I.   **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1)    whether the claimant is currently engaged in substantial gainful activity;

(2)    if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3)    if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

3

(4)     if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

(5)     if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.    The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims.  (Tr. 16-26).[2]  Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 13, 2018, the application date.  (Tr. 18). At step two, the ALJ concluded that plaintiff had the following severe impairments: obesity; schizoaffective disorder; affective disorder; anxiety disorder; agoraphobia; Osgood-Schlatter disease; osteoarthritis; and, rheumatoid arthritis.  (*Id.*).  He also concluded that plaintiff had a non-severe history of obstructive sleep apnea, insomnia, flat feet, headaches, vascular disease, and opioid and/or substance abuse.  (*Id.*).  The ALJ found that plaintiff's alleged posttraumatic stress disorder ("PTSD") was not a medically determinable impairment because "no acceptable medical source of record ha[d] diagnosed the claimant with PTSD based on demonstrable clinical signs or laboratory findings."  (*Id.*).  With respect to plaintiff's mental limitations, the

---

[2]  The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

ALJ found that he suffered from moderate difficulties in understanding, remembering, and

applying information; interacting with others; maintaining concentration, persistence, and pace;

and, in adapting and managing himself. (Tr. 19-21). At step three, the ALJ determined that

plaintiff did not have an impairment (or combination of impairments) that met or medically

equaled one of the listed impairments. (Tr. 18-21).

The ALJ concluded that plaintiff had the RFC to perform light work except that

he can occasionally climb ropes, scaffolds, ladders, ramps, or stairs; stoop, crouch, balance,

kneel, or crawl; and, finger with the non-dominant left upper extremity. (Tr. 21). The ALJ also

found that plaintiff could frequently finger with the dominant right upper extremity and

frequently handle bilaterally. (*Id.*). With respect to plaintiff's mental limitations, the ALJ found

that he is limited to simple, routine tasks; occasional interaction with supervisors, coworkers, and

the public; occasional changes in the work setting; and, sustaining concentration and persistence

for periods of up to two hours at a time. (*Id.*). At steps four and five, the ALJ determined that

plaintiff could not perform his past relevant work but that positions existed in the national

economy that plaintiff could perform, including fruit distributor, counter clerk, and laundry

sorter. (Tr. 25-26). Accordingly, the ALJ found that plaintiff was not disabled. (Tr. 26).

In formulating the RFC, the ALJ considered and evaluated six medical opinions

regarding plaintiff's physical or mental functional capacity. (Tr. 23-25). On June 13, 2018,

consultative physician Harbinder Toor, M.D., conducted an internal medicine evaluation of

plaintiff. (Tr. 484-90). Dr. Toor concluded that plaintiff has a moderate to marked limitation in

standing, walking, bending, lifting, and carrying, a "moderate limitation sitting [for] a long

time," and a mild to moderate limitation conducting fine motor activities with his hands.

(Tr. 487). Specifically, Dr. Toor observed that plaintiff was in moderate pain, had a normal gait,

had difficulty in heel-to-toe walking, declined to squat, and had difficulty changing for the exam, getting on and off the examination table and out of the chair.  (Tr. 485-86).  As it related to plaintiff's musculoskeletal examination, Dr. Toor reported that plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and fully rotary movement bilaterally. (Tr. 486).  Plaintiff's lumbar spine's flexion was limited to thirty degrees, extension was limited to zero degrees, and lateral flexion and rotation bilaterally were limited to thirty degrees.  (*Id.*). Dr. Toor noted that straight leg tests were positive at thirty degrees bilaterally in both sitting and supine positions.  (*Id.*).  Plaintiff exhibited tenderness in the wrists and declined hip movement bilaterally.  (*Id.*).  Plaintiff's flexion and extension in his knees were limited to 140 degrees bilaterally, and they exhibited tenderness and swelling.  (*Id.*).  He also exhibited tenderness and swelling below the knees.  (*Id.*).  Plaintiff's ankle plantar flexion was limited to 10 degrees bilaterally and dorsiflexion to 10 degrees.  (*Id.*).  He exhibited tenderness and swelling in the ankles.  (*Id.*).  In terms of fine motor activity of the hands, Dr. Toor found that plaintiff's hand and finger dexterity was not intact in both hands.  (Tr. 487).  Plaintiff exhibited grip strength 3/5 in the left hand and 4/5 in the right hand.  (*Id.*).  He had tenderness and slight swelling in the interphalangeal joint of the left hand.  (*Id.*).  Plaintiff demonstrated moderate difficulty grasping, holding, writing, buttoning, zipping, tying a shoelace, manipulating a coin, and holding objects in the left hand, and mild difficulty with the right hand.  (*Id.*).  The ALJ found Dr. Toor's opinion partially persuasive, concluding that the opinion "appears to overly rely on the claimant's subjective complaints and is not consistent with the overall record, as the record does not generally contain evidence or complaints to treatment providers of significant difficulties with sitting."  (Tr. 24).  The ALJ also noted that Dr. Toor's "terminology . . . concerning the

claimant's limitations is vague as to the degree to which the claimant could perform specific work-related tasks." (*Id.*).

On September 5, 2018, non-examining consultative physician A. Periakaruppan, M.D., reviewed plaintiff's medical records and Dr. Toor's opinion and concluded that plaintiff could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. (Tr. 128). Dr. Periakaruppan also found that plaintiff could stand, walk, and sit for approximately six hours in an eight-hour workday. (*Id.*). As to postural limitations, Dr. Periakaruppan found that plaintiff could frequently balance, stoop, kneel, couch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. (Tr. 128-29). As to plaintiff's manipulative limitations, Dr. Periakaruppan concluded that plaintiff "can do fine motor frequently with right hand and occasionally with left hand." (Tr. 129). The ALJ found this opinion partially persuasive, concluding that light work and fingering limitations "are consistent with the examination evidence of record, which notes mostly normal physical findings throughout, with some evidence of pain, limited motion and decreased manipulative ability by Dr. Toor." (Tr. 24). Nonetheless, the ALJ concluded that the overall record supported additional climbing, postural, and handling limitations based on Dr. Toor's objective medical findings and plaintiff's subjective complaints. (*Id.*).

On June 13, 2018, consultative examiner Todd Deneen, Psy.D., conducted a psychiatric evaluation of plaintiff. (Tr. 477-82). Dr. Deneen concluded that plaintiff will have a mild limitation with respect to understanding, remembering or applying simple directions and instructions; using reasoning and judgment to make work-related decisions; and, becoming aware of normal hazards and taking appropriate precautions. (Tr. 480). Additionally, Dr. Deneen concluded that plaintiff will have moderate limitations with respect to understanding,

7

remembering, or applying complex directions and instructions; interacting adequately with supervisors, coworkers, and the public; and, sustaining an ordinary routine and regular attendance at work. (*Id.*). He also found marked limitations with respect to regulating emotions, controlling behavior, and maintaining well-being, personal hygiene, and appropriate attire. (*Id.*). Dr. Deneen attributed plaintiff's difficulties to his cognitive deficits, lack of motivation, psychotic symptoms, and mood symptoms. (*Id.*). The ALJ found Dr. Deneen's opinion "not very persuasive" because "his examination findings do not support marked behavioral limitations, and as such, [his assessed limitations] appear to be overly based on the claimant's subjective reports." (Tr. 24). Additionally, the ALJ concluded that the "record is consistent with moderate limitation in each 'Paragraph B' area of mental work-related activity." (*Id.*).

On September 5, 2018, non-examining consultative physician M. Juriga, Ph.D., reviewed plaintiff's records, including Dr. Deneen's opinion, and assessed that plaintiff had moderate limitations in several areas of work-related mental functioning. (Tr. 130-32). Dr. Juriga opined that plaintiff "retains the mental capacity to meet the basic demands of unskilled work with low people contact on a sustained basis." (Tr. 132). The ALJ found Dr. Juriga's determination that plaintiff was limited to unskilled work with low contact generally persuasive, noting that his opinion is "generally consistent with the record as a whole, given the claimant's history of psychiatric complaints and treatment, with many unremarkable mental status findings and evidence of [his] ability to perform a range of daily activities independently." (Tr. 23-24).

Two of plaintiff's treating providers also provided opinions as to plaintiff's mental limitations. Treating source Sarah Boulduc, M.D., partially completed a treating medical source statement, concluding that plaintiff cannot work for eight hours a day and five days a week on a regular and continuous basis due to his mental illness. (Tr. 773). The ALJ found Dr.

Boulduc's opinion that plaintiff is precluded from all work "not persuasive" based on the record "as a whole, which contains psychiatric and physical complaints, but numerous unremarkable psychiatric observations and physical examination findings at baseline[,]" along with plaintiff's ability to perform a range of daily tasks.  (Tr. 24-25).

On January 9, 2017, treating source Marc Johnson, LMHC-P, completed a psychological assessment for determination of employability.  (Tr. 789-92).  Mr. Johnson opined that plaintiff was moderately limited in his ability to follow, understand, and remember simple instructions and directions; maintain basic standards of hygiene and grooming; and, perform low stress and simple tasks.  (Tr. 791).  He also opined that plaintiff was very limited in his ability to perform simple and complex tasks independently, maintain attention and concentration for role tasks, and regularly attend to a routine and maintain a schedule.  (*Id.*).  As to employability, Mr. Johnson opined that plaintiff is unable to participate in any activities except for treatment and rehabilitation for approximately three months because plaintiff's symptoms prevent him from leaving his house, interacting with others, and staying calm.  (*Id.*).  The ALJ found Mr. Johnson's opinion "not persuasive" because Mr. Johnson is not an acceptable medical source and the opinion is "remote from the claimant's alleged onset date[,] a temporary opinion," and "inconsistent with the overall and updated record, which contains several unremarkable psychiatric findings and evidence of ability to perform a range of daily activities."  (Tr. 25).

III.   <u>**Plaintiff's Contentions**</u>

Plaintiff contends that the ALJ's determination is not supported by substantial evidence and is the product of legal error.  (Docket # 9-1).  First, plaintiff contends that the ALJ erred in finding the opinion of consultative examiner Harbinder Toor, M.D., only partially

persuasive because the abnormal findings noted by Dr. Toor support his opined limitations.  (*Id.* at 12-14).  Second, plaintiff contends that the ALJ erred in evaluating the opinion of plaintiff's primary care physician, Sarah Boulduc, M.D.  (*Id.* at 14-19).

IV.   <u>**Analysis**</u>

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Soc. Sec. Ruling 96–8p, 1996 WL 374184, *2 (1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms."  *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

The Commissioner has implemented new regulations relating to the evaluation of medical opinion evidence for claims filed on or after March 27, 2017, which apply here.  *See generally* 20 C.F.R. §§ 404.1520c, 416.920c.  Under these new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[,] ... including those from [a claimant's] medical sources."  *Id.* at §§ 404.1520c(a), 416.920c(a); *accord Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283, *6 (N.D.N.Y. 2021) ("[a]ccording to the new regulations, the Commissioner will no longer give any specific

evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion") (quotations omitted); *Rivera v. Comm'r of Soc. Sec. Admin.*, 2020 WL 8167136, *14 (S.D.N.Y. 2020) ("the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion") (citation omitted), *report and recommendation adopted by*, 2021 WL 134945 (S.D.N.Y. 2021).  "Instead, an ALJ is now obligated to evaluate the persuasiveness of 'all of the medical opinions' based on the same general criteria: (1) supportability; (2) consistency with other evidence; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) other relevant case-specific factors 'that tend to support or contradict a medical opinion or prior administrative medical finding.'"  *Amanda R. v. Comm'r of Soc. Sec.*, 556 F. Supp. 3d 145, 154 (N.D.N.Y. 2021) (footnote omitted) (quoting 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5)).

According to the regulations, "supportability" and "consistency" are the "most important" factors in evaluating the persuasiveness of medical opinion evidence.  20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2).  Indeed, "[a]n ALJ is specifically required to 'explain how [he or she] considered the supportability and consistency factors' for a medical opinion," *Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283 at *7 (quoting 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)), and need not discuss the remaining factors, *see Rivera v. Comm'r of Soc. Sec. Admin.*, 2020 WL 8167136 at *14.  As it relates to the "supportability" factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  With regard to the "consistency" factor, the regulations state that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical

sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under these new regulations, "the ALJ must provide information sufficient to allow a reviewer 'to trace the path of an adjudicator's reasoning.'" *Alisa O. v. Comm'r of Soc. Sec.*, 2021 WL 3861425, *4 (W.D.N.Y. 2021) (quoting 82 Fed. Reg. 5844-01, at 5858 (Jan. 18, 2017)). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, 2020 WL 5848776, *5 (N.D.N.Y. 2020) (quotations and citation omitted). Nevertheless, "an ALJ is not required to adopt a medical opinion in its entirety and may determine an RFC that differs from a medical opinion, where these differences are supported by substantial evidence in the record and are not the product of legal error." *Ferreras-Matos v. Comm'r of Soc. Sec.*, 2021 WL 7287630, *18 (S.D.N.Y. 2021) (collecting cases), *report and recommendation adopted by*, 2022 WL 292921 (S.D.N.Y. 2022); *Jeffrey G. v. Comm'r of Soc. Sec.*, 2021 WL 4844146, *10 (N.D.N.Y. 2021) ("[e]ven if the ALJ had effectively rejected a portion of [a medical opinion she found persuasive] . . . , she was under no obligation to accept the consultative examiner's opinion as a whole").

A.    **The ALJ's Analysis of Dr. Toor's Opinion**

Plaintiff asserts that the ALJ failed to adequately explain his assessment of the supportability and consistency of Dr. Toor's opinion. (Docket # 9-1 at 12-14). I disagree. As to supportability, the ALJ specifically acknowledged that Dr. Toor's opinion was based upon his "in-person examination" and that he provided an adequate explanation for the limitations he assessed. (Tr. 24). Indeed, the ALJ's decision explicitly referenced and considered Dr. Toor's

physical examination findings in formulating the RFC.  (Tr. 23 ("[g]iven such [essentially normal physical finding in the treatment notes], with normal gait, station[,] and strength at baseline, but noting Dr. Toor's findings of decreased spinal and extremity range of motion and pain in June 2018, . . . the undersigned finds that the overall record is consistent with a reduced range of light work")).

Similarly, with respect to consistency, the ALJ explained that Dr. Toor's opinion, which included a moderate limitation for sitting "a long time" (Tr. 487), was not consistent with the record because the record was devoid of any "evidence or complaints to treatment providers of significant difficulties with sitting."  (Tr. 24).  This conclusion is well-supported by the record, including plaintiff's testimony that he mostly "sit[s] in one spot during the day."  (Tr. 110 ("I do sometimes have to get up")).

The ALJ also concluded that Dr. Toor's opinion appeared to rely heavily upon claimant's subjective complaints and was vague in terms of the "degree to which [plaintiff] could perform specific work-related tasks."  (Tr. 24).  Although these findings are somewhat conclusory, review of the decision as a whole demonstrates that the ALJ adequately provided a basis for determining that Dr. Toor's opinion was only partially persuasive.

In assessing plaintiff's physical limitations in connection with the RFC, the ALJ carefully reviewed the medical opinions contained in the record and considered them in light of the record as a whole, including plaintiff's medical records and his testimony.  Considering the longitudinal medical record, the ALJ observed that it "contains only limited evidence of treatment for physical conditions."  (Tr. 22).  For example, the ALJ highlighted that 2019 and 2020 physical exam records revealed normal gait, calluses on the bilateral feet with decreased

sensation, normal upper and lower extremities to inspection and palpation, and right knee joint line tenderness in March 2020.  (Tr. 23).

       In evaluating the medical opinions of record, the ALJ explained that the assessed limitations of both Dr. Toor and Dr. Periakaruppan were partially persuasive.  With respect to Dr. Perikaruppan, the ALJ concluded that the assessment for light work with some postural and fingering limitations was generally consistent with the record, which "notes mostly normal physical findings throughout, with some evidence of pain, limited motion[,] and decreased manipulative ability."  (Tr. 24).  Nevertheless, considering Dr. Toor's observations of "decreased spinal and extremity range of motion and pain . . . [and] decreased grip strength bilaterally" and acknowledging the effects of plaintiff's obesity, the ALJ assessed additional "climbing and postural limitations, and frequent handling bilaterally."  (Tr. 23-24).  Thus, in formulating plaintiff's RFC, the ALJ adequately explained his reasons for evaluating the various medical opinions as he did; based on the record in this case, including the opinion evidence and treatment notes, I find that the ALJ's RFC determination is supported by substantial evidence.

       Plaintiff takes issue with the ALJ's observations that Dr. Toor is a "one-time examiner only" and that Dr. Toor's opinion "appears to overly rely on the claimant's subjective complaints."  (Tr. 24; Docket # 9-1 at 13-14 (noting that although "Dr. Toor performed a single examination, this is still inherently more reliable than the state agency consultative opinion that never saw [p]laintiff and only evaluated a cold record" and that "the Second Circuit has explicitly rejected the conclusion that an ALJ cannot rely partially on subjective complaints")).  Although the ALJ noted that Dr. Toor examined plaintiff on a single occasion, as explained above, the decision does not reflect that the ALJ inappropriately discounted Dr. Toor's opinion on this basis.  Indeed, as discussed above, in resolving the conflicts between the opinions of Dr.

Toor and Dr. Periakaruppan, the ALJ assessed additional climbing, postural, and handling limitations based on "Dr. Toor's findings of decreased grip strength[] [and] spinal and extremity abnormalities," as well as plaintiff's "subjective hand-related complaints."  (Tr. 24).

In any event, pursuant to the regulations, the opinions of all medical sources, including both non-examining and one-time examining consultants, "will be held to the same standard of persuasiveness of content."  *See Lisa C. v. Kijakazi*, 2022 WL 2105853, *7 (N.D.N.Y. 2022) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, *5853)).  Accordingly, the ALJ could properly conclude that the limitations assessed by Periakaruppan were more consistent with and supported by the record than those assessed by Toor, even though Toor personally examined plaintiff.  *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (summary order) (citing *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[t]he regulations ... permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record")); *Maleski v. Comm'r of Soc. Sec.*, 2020 WL 210064, *4 (W.D.N.Y. 2020) ("[i]t is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining [s]tate agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability[;] . . . [t]he opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record"); *Rose o/b/o X.G.T.A. v. Berryhill*, 2019 WL 2453352, *3 (S.D.N.Y.) ("when supported by evidence in the record, the opinion of a nonexamining physician can also constitute substantial evidence"), *report and recommendation adopted by*, 2019 WL 2498279 (S.D.N.Y. 2019); *Cheatham v. Comm'r of Soc. Sec.*, 2018 WL 5809937, *6 (W.D.N.Y. 2018) ("[n]on-examining medical consultants[] . . . may provide opinions which constitute substantial

evidence"); *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018) ("[u]nder

the regulations, the ALJ was permitted to consider the opinion of [the non-examining physician]

in making a disability determination[;] . . . [m]oreover, the opinion of a non-examining medical

expert . . . may be considered substantial evidence if consistent with the record as a whole").

        Likewise, the decision belies plaintiff's contention that the ALJ rejected Dr.

Toor's opinion "[j]ust because Dr. Toor partially relied on [p]laintiff's [subjective] complaints."

(Docket # 9-1 at 14).  As an initial matter, although an ALJ "cannot lawfully reject a medical

source's opinion *solely* because it relies on subjective complaints," he or she "may assign a

treating source's opinion little weight if it is based on a claimant's questionable, subjective

complaints."  *Tomczak v. Comm'r of Soc. Sec.*, 2019 WL 2059679, *1 (W.D.N.Y. 2019)

(emphasis supplied).  Indeed, "the ALJ's credibility determination may influence how he weighs

the medical opinions, especially when those opinions are based on the claimant's subjective

statements," and "[i]t is within the ALJ's discretion[] . . . to consider the claimant's subjective

complaints, evaluate [his] credibility, and make an independent judgment, in light of medical

findings and other evidence, regarding the true extent of the pain alleged."  *Jackson v. Berryhill*,

2018 WL 3306193, *5 (W.D.N.Y. 2018) (quotations omitted).  Thus, "[w]hen the ALJ finds the

claimant's allegations not credible, he is entitled to discount the opinion of a medical source who

relied on the claimant's subjective complaints."  *Id.* (citing *Julin v. Colvin*, 826 F.3d 1082, 1086

(8th Cir. 2016) ("[b]ecause the ALJ declined to credit [plaintiff], the ALJ was entitled to

discount [the treating source's] opinions insofar as they relied on [plaintiff's] subjective

complaints")); *see also Tomczak v. Comm'r of Soc. Sec.*, 2019 WL 2059679 at *1 (the ALJ "can

reject the opinion if he previously found the claimant's subjective complaints unsound and the

medical source relied on those complaints when reaching his opinion").  In any event, as noted

above, the ALJ in this case incorporated a limitation for frequently handling bilaterally based in part on "the claimant's subjective hand-related complaints" (Tr. 24), thus undermining any contention that the ALJ simply rejected opinions that considered plaintiff's subjective complaints.

### B.    The ALJ's Assessment of Dr. Boulduc's Opinion

Plaintiff also challenges the ALJ's assessment of his treating physician's opinion. (Docket # 9-1 at 14-19).  As stated above, Dr. Boulduc indicated in a treating medical source statement that plaintiff's mental limitations "[p]reclude[] all performance in a regular work setting."  (Tr. 774).  Although the form completed by Dr. Boulduc requested her assessment of plaintiff's ability to complete a range of work-related functions, Dr. Boulduc left that portion of the form blank.  (Tr. 775-78).

As an initial matter, the Court notes that "'the ultimate issue of disability is reserved for the Commissioner.'"  *Amanda L. v. Kijakazi*, 2022 WL 170604, *2 (W.D.N.Y. 2022) (quoting *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003)).  Thus, a treating source's "statements that a claimant is or is not disabled[] are to be treated as 'evidence that is neither valuable nor persuasive,' and are exempted from the multi-factor analysis for medical opinions." *Id.* at *3 (quoting 20 C.F.R. §§ 404.1520b(c)(3)(i); 416.920b(c)(3)(i)).  Because this "opinion" is more analogous to a disability finding than a functional assessment, it is questionable whether it is "entitled to further analysis."[3]  *See id.*; *Melissa S. v. Comm'r of Soc. Sec.*, 2022 WL 1091608, *3 (N.D.N.Y. 2022) ("statements that an individual is or is not able to

---

[3]  Plaintiff contends that Dr. Boulduc opined that plaintiff did not possess the mental abilities and aptitudes needed to perform unskilled work.  (Docket # 9-1 at 9-10).  Review of the form, however, indicates that Dr. Boulduc was asked to rate, for each ability and aptitude listed, plaintiff's abilities in accordance with five defined categories. (Tr. 774-75).  Instead, Dr. Boulduc simply circled the category in the definition box that is defined as "[p]recludes all performance in a regular work setting."  (Tr. 774).

work, or able to perform regular or continuing work . . . are clearly determinations reserved for the Commissioner and therefore the ALJ was not required to explain how any such statements were evaluated") (internal quotations and citations omitted); *Rachel D. v. Comm'r of Soc. Sec.*, 573 F. Supp. 3d 892, 900 (W.D.N.Y. 2021) ("under the new regulations applicable to [p]laintiff's claim, an ALJ is not required to discuss statements on issues reserved to the Commissioner[;] . . . [t]he . . . treatment note does not contain any further assessment of [p]laintiff's functioning in a work setting, but rather states merely that [p]laintiff [is] disabled[;] [a]ccordingly, the ALJ was not required to consider that statement, and remand is not required on this basis").

Assuming that it is, contrary to plaintiff's contention, the ALJ properly assessed the supportability of Dr. Boulduc's opinion when he found that she "offered limited explanation for [her] opinion, or reference to objective findings" and that she "appear[ed] to rely primarily on the claimant's subjective complaints."  (Tr. 24; Docket # 9-1 at 14-15).  Notably, plaintiff's counsel acknowledged at the hearing that Dr. Boulduc "doesn't offer great detail in her opinion." (Tr. 97).  Plaintiff now contends that although "she did not include [supporting explanations] in the opinion form, she included [them] in her treatment notes."  (Docket # 9-1 at 14). Specifically, plaintiff points to Dr. Boulduc's observation that plaintiff "appeared unkempt" in September 2019, and the fact that plaintiff attended follow-up medical appointments for prescription medication and reported continued use of marijuana and consideration of medical marijuana.  (*Id.* at 15).  I disagree that these observations explain or support Dr. Boulduc's opinion that plaintiff is precluded from "all performance in a regular work setting."  (Tr. 774).

With respect to the ALJ's assessment of the consistency of Dr. Boulduc's opinion, plaintiff contends that the ALJ "did not explain" his finding that the opinion was not consistent

with the record as a whole and summarily concluded that "there were 'psychiatric and physical complaints, but numerous unremarkable psychiatric observations and physical examination findings at baseline.'" (Docket # 9-1 at 16 (quoting Tr. 24-25)).  I disagree that the ALJ's reference to "numerous unremarkable psychiatric observations and physical examination findings" is conclusory, particularly in the context of the decision as a whole.  Elsewhere in his decision, the ALJ referred to July 2019 treatment notes as reflecting "unremarkable psychiatric observations."  (Tr. 19).  Review of the cited record shows that although plaintiff was "unkempt," he appeared "pleasant" with no signs of acute distress, his mood and affect were normal, and his judgment and insight were adequate.  (Tr. 501).  Likewise, the ALJ referred to additional mental status examinations between July 2019 and October 2020 that reflected "generalized notes of cooperative behavior, good eye contact, normal mood[,] and normal affect."  (Tr. 20).

Plaintiff complains that the ALJ "rejected [Dr. Boulduc's] opinion after concluding it was based on subjective complaints" but "gives nothing to say how this is the case."  (Docket # 9-1 at 15).  To the contrary, the ALJ explained that Dr. Boulduc "offered limited explanation for this opinion, or reference to objective findings.  *As such*, it appears to rely primarily on the claimant's subjective complaints."  (Tr. 24 (emphasis added)).  In any event, as stated above, the decision does not indicate that the ALJ rejected Dr. Boulduc's or any other opinion based solely on the fact that it relied on subjective complaints.  *See Horne v. Comm'r of Soc. Sec.*, 2020 WL 5044218, *3 (W.D.N.Y. 2020) (rejecting plaintiff's challenge that the ALJ failed to explain how his subjective complaints were inconsistent with the record because the ALJ explained how the "complaints of disabling symptoms were not consistent with the objective findings").

Plaintiff next complains that the ALJ improperly and selectively considered plaintiff's reported daily activities.  (Docket # 9-1 at 16-18).  Although "it is true that the capability to perform activities of daily living is not inherently inconsistent with a finding of disability, . . . the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms." *Christina J. v. Comm'r of Soc. Sec.*, 2023 WL 6282924, *5 (W.D.N.Y. 2023) (citing 20 C.F.R. § 416.929(c)(3)(i)).  Plaintiff contends that the ALJ failed to consider plaintiff's reports of more limited daily activities, such as his testimony that he was nervous to leave the house and went grocery shopping only once in the past two years.  (Docket # 9-1 at 18).  To the contrary, the ALJ referred to plaintiff's reports of "rarely shopp[ing] for groceries due to not wanting to be around many people" in assessing plaintiff's limitation in adapting and managing himself. (Tr. 20-21).  Additionally, the ALJ considered plaintiff's "alleged interactive complaints" and agoraphobia in concluding that he would be limited to "occasional interaction with supervisors, co-workers and the public."  (Tr. 23).  Although plaintiff cites his testimony concerning his difficulty cooking and concentration difficulties watching television, the ALJ assessed that plaintiff was limited to "sustain[ing] concentration and persistence for periods of up to two hours at a time" in "[c]onsider[ation] [of] the claimant's subjective complaints."  (*Id.*).

Finally, plaintiff contends that the ALJ erred in assessing Dr. Boulduc's opinion because it was "consistent with [the] abnormal consultative examination" of Dr. Deneen. (Docket # 9-1 at 18-19).  Specifically, plaintiff argues that the ALJ erred by failing to compare Dr. Boulduc's opinion with Dr. Deneen's opinion.  (*Id.*).  Specifically, plaintiff refers to Dr. Deneen's findings that plaintiff was unkempt with only fair hygiene and grooming; had a slouched posture and poor eye contact; exhibited mild attention and concentration impairments

due to anxiety and possible attention deficits; demonstrated recent and remote memory impairments due to anxiety and possible memory deficits; and, had a below average intellectual functioning with a somewhat limited fund of general information.  (*Id.* at 19).  Although the ALJ did not explicitly compare these two opinions, the ALJ did consider and incorporate Dr. Deneen's examination by limiting plaintiff to "simple and routine tasks."  (Tr. 23).  Moreover, in assessing Dr. Deneen's opinion, the ALJ concluded that plaintiff's mental status findings, which are reflected in numerous mental status examinations conducted by Dr. Boulduc, were not consistent with the more than moderate adaptive limitations that Dr. Deneen assessed.  (Tr. 24).

As with the ALJ's assessment of plaintiff's physical limitations, I find that the ALJ's determination with respect to plaintiff's mental limitations demonstrates that he carefully reviewed the opinions contained in the record and considered them in light of the record as a whole.  The ALJ considered the "many unremarkable mental status findings [in the record] and evidence of [plaintiff's] ability to perform a range of daily activities independently."  (*Id.*).  He also considered the various notes in the medical records of plaintiff's memory impairments, below-average intellectual functions, limited fund of knowledge, and concentration difficulties, along with plaintiff's interactive complaints and diagnoses.  (Tr. 23).  In light of the record as a whole, the ALJ considered the various medical opinions and accepted those most consistent with the record, which was within his discretion to do.  *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("[the courts] defer to the Commissioner's resolution of conflicting evidence"); *Luther v. Colvin*, 2013 WL 3816540, *6 (W.D.N.Y. 2013) ("the ALJ arrived at her conclusions by weighing conflicting evidence in the record and crediting that which was more persuasive and consistent with the record as a whole, a decision well within her discretion to do").  As explained in the decision, the ALJ rendered an RFC based upon the evidence in the

entire record, including the medical opinions, objective findings in the treatment notes, and plaintiff's subjective complaints and reports of his daily activities. I find that the ALJ adequately explained his reasons for evaluating the various medical opinions as he did and that substantial evidence supports his determination.

In sum, I find that plaintiff's challenges amount to a disagreement with the ALJ's consideration of conflicting evidence. "[U]nder the substantial evidence standard of review, [however,] it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support [his] position." *Warren v. Comm'r of Soc. Sec.*, 2016 WL 7223338, *6 (N.D.N.Y.), *report and recommendation adopted by*, 2016 WL 7238947 (N.D.N.Y. 2016). Rather, plaintiff must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in [the] record." *Id.*; *see also Avant v. Colvin*, 2016 WL 5799080, *3 (W.D.N.Y. 2016) ("[a]ll of [p]laintiff's arguments focus on the substantiality of the evidence supporting the ALJ's decision[;] [h]owever, as the Second Circuit has explained, 'whether there is substantial evidence supporting the claimant's views is not the question ...; rather, the [c]ourt must decide whether substantial evidence supports the ALJ's decision'") (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (brackets omitted)). The ALJ's decision in this case demonstrates that he weighed the record evidence, including the conflicting evidence; no basis exists for this Court to overturn the ALJ's assessment of the evidence or his resolution of the conflicts in it. *See Casey v. Comm'r of Soc. Sec.*, 2015 WL 5512602, *9 (N.D.N.Y. 2015) ("[i]t is the province of the [ALJ] to consider and resolve conflicts in the evidence as long as the decision rests upon adequate findings supported by evidence having rational probative force[;] . . . [the ALJ] properly considered the totality of the record evidence, and concluded that the

evidence quoted above outweighed [plaintiff's] evidence to the contrary") (internal quotation omitted).

### CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's denial of SSI was based on substantial evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 11)** is **GRANTED**.  Plaintiff's motion for judgment on the pleadings **(Docket # 9)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated:	Rochester, New York
	March 7, 2024